WESTERN DISTRICT OF TN
FILED IN OPEN COURT:
DATE: 5/20/21
TIME: 4:05 pm

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDER ALPEROVICH, MD,<br><br>Defendant. | )<br>)<br>) Cr. No.: 1:21-10049-JDB-01<br>)<br>) 18 U.S.C. § 2<br>) 18 U.S.C. § 1035<br>)<br>)<br>)<br>)<br>) **Notice of Forfeiture**<br>) |

## INFORMATION

**THE ACTING UNITED STATES ATTORNEY CHARGES:**

At all times material to this information:

1. The Defendant **ALEXANDER ALPEROVICH, MD** was a physician licensed to practice medicine in the state of Tennessee, and held a registration number with the Drug Enforcement Administration (DEA), which permitted him to prescribe controlled substances.

2. Jeffrey Young was a nurse practitioner licensed to practice nursing in the state of Tennessee, and also held a registration number with the DEA, which permitted him, when appropriately supervised, to prescribe controlled substances.

1

## CONTROLLED SUBSTANCES

3. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

4. The CSA and its implementing regulations set forth which drugs and other substances were defined by law as "controlled substances," and assigned those controlled substances to one of five Schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

## TENNESSEE REGULATIONS AND THE DEFENDANT'S ROLE

5. The Tennessee State Board of Medical Examiners' (TSBME) Division of Health Related Boards promulgated certain rules and regulations governing the supervision of nurse practitioners who wrote prescriptions for controlled substances.

6. Specifically, if a nurse practitioner prescribed a controlled substance, a supervising physician was required to make a personal review

of the historical, physical, and therapeutic data every ten business days, and was further required to so certify by signature on any such patient within thirty days.

7. In addition, a supervising physician was required to visit any remote site staffed by a nurse practitioner whom he was supervising at least once every thirty days.

8. The identity of each nurse practitioner's supervising physician was displayed on the TSBME's website, and the supervising physician's DEA registration number was recorded on the nurse practitioner's prescription pad.

9. Pharmacies in the state of Tennessee often refused to fill controlled substance prescriptions written by nurse practitioners who were not supervised by a supervising physician.

10. Blue Cross Blue Shield of Tennessee ("BCBST") was a health care benefit program, pursuant to Title 18, United States Code, Section 24(b).

11. BCBST, like other health care benefit programs, would not reimburse claims for services that had been provided by – or controlled substances that had been prescribed by – a nurse practitioner without the proper supervision of a supervising physician.

12. The Defendant directly and indirectly provided his DEA registration number to Jeffrey Young in November 2015 and allowed Jeffrey Young to place Defendant's DEA registration number on Jeffrey Young's prescription pads as the supervising physician for Jeffrey Young's prescriptions.

13. The Defendant obtained a signed supervision agreement from Jeffrey Young in January 2016.

14. The Defendant visited Jeffrey Young's clinic and also reviewed approximately 50 of Jeffrey Young's patient records selected by the clinic's staff for the first time in early February 2016.

15. During the time that the Defendant purported to be supervising Jeffrey Young, Jeffrey Young prescribed controlled substances with a street value totaling between $3 million and $9.5 million.

16. The Defendant received approximately $3,000 from Jeffrey Young for his role as supervising physician.

### THE FALSE STATEMENT

17. On or about February 9, 2016, in connection with prescriptions for controlled substances issued by Jeffrey Young on which Defendant was identified as the supervising physician, and for which BCBST and other health care benefit programs had reimbursed claims for the prescriptions

and related office visits, an investigator from the TSBME asked the Defendant whether he was, in fact, Jeffrey Young's supervising physician.

18. The Defendant told the investigator that he (1) had been supervising Jeffrey Young since December 2015; (2) had visited Jeffrey Young's clinic monthly; and (3) believed he was reviewing all of Jeffrey Young's controlled substance prescriptions in his capacity as a supervising physician.

19. The Defendant further signed a sworn statement attesting that he started to supervise Jeffrey Young in December 2015.

## COUNT 1
### FALSE STATEMENTS RELATED TO HEALTH CARE MATTERS
### (18 U.S.C. § 1035)

20. Paragraphs 1 through 19 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

21. On or about February 9, 2016, in the Western District of Tennessee, and elsewhere,

**ALEXANDER ALPEROVICH, M.D.,**

in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving Blue Cross Blue Shield of Tennessee and other health care benefit programs affecting commerce, did

knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, he represented to an investigator of the Tennessee State Board of Medical Examiners that he was acting as Jeffrey Young's supervising physician during a time period when he was not complying with the supervision requirements.

In violation of Title 18, United States Code, Sections 1035 and 2.

## NOTICE OF CRIMINAL FORFEITURE

### (18 U.S.C. § 982)

22. The allegations contained in Paragraphs 1 through 21 of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

23. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of an offense in violation of Title 18, United States Code, Section 1035, a Federal health care offense, the defendant,

**ALEXANDER ALPEROVICH,**

shall forfeit to the United States of America, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds of

the violations, including but not limited to a sum of money equal to the amount of the gross proceeds of the offenses. The property to be forfeited is a money judgment in the amount of $3,000.

**THE UNITED STATES OF AMERICA**

DATED: May 17, 2021

*Beth Boswell for Joseph C. Murphy, Jr.*
JOSEPH C. MURPHY, JR.
**ACTING UNITED STATES ATTORNEY**

*Katherine E. Payerle*
DANIEL KAHN
**ACTING CHIEF, FRAUD SECTION**

**By: Katherine Payerle**
**Assistant Chief, Fraud Section**