## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

UNITED STATES OF AMERICA,   )

      Plaintiff,   )   Case No: 1:21-10049-JDB-01

      )

vs.   )   WESTERN DISTRICT OF TN

      )   FILED IN OPEN COURT:

ALEXANDER ALPEROVICH,   )   DATE: 5/20/21

      )   TIME: 4:05 pm

      Defendant.   )   INITIALS: ee

## PLEA AGREEMENT

The Defendant, Alexander Alperovich, by and through his counsel, Stephen Ross Johnson and William D. Massey, knowingly and voluntarily agrees with the United States, through Joseph C. Murphy, Jr., Acting United States Attorney for the Western District of Tennessee, and Daniel Kahn, Acting Chief, Fraud Section, Criminal Divison, U.S. Department of Justice, to enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(B).

1.    The Defendant agrees to enter a plea of guilty to the Bill of Information in this matter, in which the Defendant is charged with one count of making a false statement in connection with a health care matter in violation of Title 18, United States Code, Section 1035. With respect to the charge described herein, the Defendant knowingly and voluntarily waives his right to Indictment by Grand Jury. He further waives any right to a hearing to establish probable cause.

2.    Section 1035 is committed when, in any matter involving a health care benefit program, one knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services. The term "health care benefit program" means any public or private

1

plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract. 18 U.S.C. § 24(b). Section 1035 is punishable by a fine and imprisonment of not more than five years.

3.      The Defendant further agrees that:

a.      He is pleading guilty to the Bill of Information because he is guilty of the charge contained within;

b.      By pleading guilty, he is giving up several rights, including the right to plead not guilty; the right to a speedy and public trial by jury; the right to assistance of counsel at trial; the right to be presumed innocent and to have the burden of proof placed on the United States to prove the Defendant guilty beyond a reasonable doubt; the right to confront and cross-examine witnesses against the Defendant; the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and the right not to testify and have that choice not used against the Defendant;

c.      If he had proceeded to trial and had been convicted, he would have had the right to appeal the conviction. **He understands that by pleading guilty, he gives up the right to appeal the conviction.** Based on concessions made in this plea agreement by the United States, he also hereby waives his rights to appeal his sentence, including an upward departure or variance from the guideline range calculated by the Court, unless the sentence imposed by the Court exceeds the maximum sentence permitted by statute;

d.      Except with respect to claims of ineffective assistance of counsel or prosecutorial misconduct, **the Defendant waives his right to challenge the sufficiency or the voluntariness of his guilty plea on direct appeal or in any collateral attack**;

e.      The special assessment of $100 is due and payable to the U.S. District Court Clerk's Office, and the Defendant agrees to provide the United States with evidence of payment immediately after sentencing; and

f.      This writing constitutes the entire Plea Agreement between the Defendant and the United States with respect to the plea of guilty. No additional promises, representations or inducements, other than those referenced in this Plea Agreement, have been made to the Defendant or to the Defendant's attorney with regard to this plea, and none will be made or entered into unless in writing and signed by all parties.

2

4.     In support of this guilty plea, the Defendant agrees and stipulates to the following facts, which satisfy the offense elements. These facts are submitted for purposes of the Defendant's guilty plea. They do not necessarily constitute all of the facts in this case. Other facts may be relevant to sentencing. Both the Defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentencing in this case.

The Defendant knowingly and willfully, falsely answered an inquiry in connection with the delivery of and payment for health care benefits, items, and services as follows:

*On or about February 9, 2016, the Tennessee Board of Nursing (the "Board") asked the Defendant whether he was serving as the supervising physician for nurse practitioner Jeffrey Young, at Young's clinic Preventagenix, LLC (the "Clinic"). The Defendant falsely responded that he had began supervising Young in December 2015, by visiting the Clinic once monthly, and that he believed he was reviewing all of Young's controlled substances prescriptions in his capacity as supervising physician. The Defendant further signed a sworn statement that he started to supervise Young from December 2015 and currently supervised Young.*

*In reality, the following facts were true: Defendant had directly or indirectly provided his DEA registration number to Young in November 2015. The Defendant allowed Young to place the Defendant's DEA registration number on Young's prescription pads and allowed Young to prescribe controlled substances under his DEA registration number.*

*However, although a supervision agreement was prepared and signed by the Defendant in December 2015, Young did not co-sign it until at least January 2016. In addition, at the time of the Board's inquiry in February 2016, the Defendant had only visited the Clinic one time. The single visit also occurred in February 2016; only days before the Board's inquiry. At that visit, the Defendant had reviewed approximately 50 files selected by the Clinic's staff. At his subsequent visits, the Defendant was only given a selection of patients, mostly seen by Young on the specific dates of the patient's visit. The Defendant had not implemented any system or procedure whereby he would ensure he was actually reviewing every controlled substance prescription written by Young, and instead reviewed the records that Young's office provided. Following his February visit, the Defendant reviewed few or no controlled substance prescriptions until June 2016. Of the 900 charts seized by the government, an estimated 48 included the Defendant's signature.*

*According to text messages recovered by the government, members of the Clinic were purposely presenting the Defendant with patient files containing prescriptions that did not contain narcotics prescriptions during this time period. In May 2016, the Defendant notified Young that he was giving notice that he would no longer serve as Young's supervising physician, and the Defendant last visited the Clinic to review patient files in June 2016.*

*Furthermore, the Defendant's conduct was connected to the delivery of health care items and health care benefits because holding himself out as a supervising physician allowed Young to (1) prescribe controlled substances that pharmacies otherwise would not have filled; and (2) bill health insurance programs for services that otherwise would not have been paid.*

*For example, on or about November 2, 2015, Young's office manager sent a text message to the Defendant explaining that a local pharmacy would not fill Young's prescriptions without a medical director.*

*To illustrate: The Defendant and the government agree that the government could prove the following example: On or about March 1, 2016, when the Defendant was holding himself out as Young's supervising physician, Young prescribed a patient with initials W.A. 120 pills of Oxycodone HCL in the 30 milligram tablet form, with a total prescription street value of approximately $3,600. On that same day, Young billed W.A.'s insurance company $200 for W.A.'s visit with Young, and received approximately $84.67 from that insurance company.*

*The parties agree that according to the U.S. Sentencing Guidelines, in a case where the defendant has violated 18 U.S.C. § 1035 involving controlled substances, "loss" is calculated according to the estimated street value of the controlled substances prescribed as a result of the false statement, even if the controlled substances were not sold and were taken by the patient to whom they were prescribed.*

*In all, Young was able to use the Defendant's purported status as a supervising physician to prescribe controlled substances such that the "loss" was an estimated street value of more than $3.5 million, but not more than $9.5 million.*

5.   The Defendant understands that:

a.   Should it be judged by the United States that the Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting obstruction or impeding justice within meaning of

U.S.S.G. §3C1.1 from the date of the Defendant's signing of this plea agreement to the date of the Defendant's sentencing, or if the Defendant attempts to withdraw the plea, the government will be released from its obligations and would become free to argue for any sentence within the statutory limits, the Defendant would waive any rights under the Speedy Trial Act as to the Indictment in case number 1:19-cr-10040-JTF (<u>United States v. Alexander Alperovich</u> et al) and the United States would be free to pursue any charges related to the above-admitted conduct in the Western District of Tennessee. Furthermore, such a breach by the Defendant would not release the Defendant from the plea of guilty; and

b.   The Defendant further expressly waives his rights pursuant to Rule 410(a) of the Federal Rules of Evidence upon affixing his signature to this plea agreement. The Defendant understands and agrees that in the event the Defendant violates the plea agreement, the Defendant does not enter his plea of guilty, or his guilty plea is for any reason withdrawn, any statements made by the Defendant to law enforcement agents or an attorney for the prosecuting authority during plea discussions, any statements made by the Defendant during any court proceeding involving the Defendant's plea of guilty, including the "agreed facts" set forth herein, any other factual bases or summaries signed by the Defendant, and any leads from such statements, factual bases or summaries, shall be admissible for all purposes against the Defendant in any and all criminal actions. If the United States violates the terms of this plea agreement, the Defendant will have the right to withdraw from this agreement.

6.   The parties agree that Defendant's ~~base~~ offense level, including relevant conduct under U.S.S.G §§2B1.1 and 1B1.3, is calculated according to U.S.S.G. §2B1.1 and is level 24 (B) the Defendant abused a position of public or private trust or used a special skill in a manner that significantly facilitated the commission or concealment of the offense pursuant to U.S.S.G. §3B1.3 resulting in an increase of 2 levels.

7.   Given the Defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of U.S.S.G. §3E1.1(a). Further, if the Defendant's offense level is 16 or greater, and the Defendant is awarded the two-level reduction pursuant to U.S.S.G. §3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to U.S.S.G. §3E1.1(b). Should the Defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the Defendant's offense, including violations of conditions of release or the commission of any additional offense prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the

Defendant not receive any reduction for acceptance of responsibility under U.S.S.G. §3E1.1.

8. The Defendant agrees to cooperate fully, completely, and truthfully with any and all law enforcement agents and personnel of the United States' Attorney's Office. The following conditions of cooperation are subject to the Rule 410 Waiver in Paragraph 5(b) above, and apply only if the plea of guilty is entered, the Defendant complies with this agreement, and the Defendant does not withdraw his plea:

    a. The Defendant will respond truthfully and completely to any and all questions posed to him during the meeting and will produce voluntarily any and all documents, records, or other tangible evidence related to the matters about which the government inquires.

    b. The Defendant will refrain from any further criminal conduct, including any violations of state, local or federal law.

    c. The Defendant will give truthful and complete testimony and/or information as to his involvement in the charges alleged in the indictment in this case.

    d. If the Defendant complies fully with this agreement, (i) the government will not use information provided by the Defendant against him directly in any future proceeding; and (ii) specifically, pursuant to Sentencing Guidelines §1B1.8, any information provided by the Defendant during the proffer, to the extent that it was unknown to the government, should not be used in the calculation of his sentencing guideline range.

    e. Notwithstanding subparagraph (d) above, the government may use (a) the Defendant's statement concerning his involvement in the charges alleged in the indictment in the above referenced case, and (b) information derived directly or indirectly from the meeting for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used in any prosecution of the Defendant by the government, and (c) statements made by the Defendant or his counsel at the meeting and subsequent meetings as well as all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should the Defendant testify, or to rebut any evidence, argument or representations offered by or on behalf of the Defendant in the government's case-in-chief in connection with the trial and/or sentencing, should any prosecution of the Defendant be undertaken. To the extent that other evidence is discovered as a result of the statements made by the Defendant, such evidence can be admitted against him. This provision is necessary in order to

eliminate the necessity for a <u>Kastigar</u> hearing wherein the government would have the burden of proving the evidence was derived from a source independent of the Defendant's statements.

f.  The government reserves the right to use any statements or information provided by the Defendant in any prosecution for false statements, obstruction of justice or perjury.

g.  The government agrees to give full consideration to the statements made by the Defendant in determining whether a motion should be made pursuant to §5K1.1 of the Sentencing Guidelines. However, the Defendant understands that there has been no promise or representation made by any agent or employee of the United States that his statements constitute "substantial assistance" necessary for the government to make a §5K1.1 motion or a motion pursuant to 21 U.S.C. § 3553(e) or Rule 35 of the Federal Rules of Criminal Procedure on his behalf. The Defendant understands and acknowledges that the determination as to whether his efforts constitute "substantial assistance" will be made solely within the discretion of the United States Attorney's office and the United States Department of Justice.

h.  The Defendant's complete truthfulness and candor are express material conditions to the undertakings of the government set forth in this agreement. Therefore, if the government should ever conclude that the Defendant has knowingly withheld material information from the government or otherwise has not been completely truthful and candid, the government may use against the Defendant for any purpose (including sentencing) any statements made or other information provided by the Defendant or his counsel during any proffer session. If the government so concludes, it will notify counsel for the Defendant before making any use of such statements or other information.

9.  The Defendant and the United States have reached no other agreements with respect to the calculation of the United States Sentencing Guidelines. However, the government will recommend a sentence in the lower end of the Guidelines as calculated by the court.

10. Notwithstanding the foregoing, if the Defendant attempts to withdraw his plea for any other reason, then the Government will be free to argue for any sentence within the statutory limits.

7

11.     Neither the United States, nor any law enforcement officer, can or has made any promises or representations as to whether and when the Court will accept the recommendation of the government.

12.     The United States agrees that, if the Court accepts the Defendant's guilty plea, and if the Defendant complies with the terms of it, upon the sentencing of the Defendant, the United States will move to dismiss the Indictment in case number 1:19-cr-10040 (United States v. Alexander Alperovich, et al) as to the Defendant, and the United States will not prosecute the Defendant for any offense related to the conduct described herein, with the exception of crimes of violence or perjury. The United States agrees not to further prosecute the Defendant in the Western District of Tennessee for any other non-tax criminal offenses committed by the Defendant that are known to the United States Attorney's Office for the Western District of Tennessee and the Fraud Section, Criminal Divison, U.S. Department of Justice at the time this plea agreement is signed by both parties.

13.     The Defendant agrees to forfeit the assets he received from Young and the Clinic, which the parties agree totaled $3,000.00. The parties agree that no other assets or property shall be subject to forfeiture or shall be due and owing as restitution.

14.     By signing this agreement, the Defendant affirms that he is satisfied with his lawyers' counsel and representation, and hereby freely and voluntarily enters into this plea agreement. The Defendant understands that this writing constitutes the entire Plea Agreement between the Parties with respect to the plea of guilty. No additional promises, representations or inducements, other than those referenced in this Plea Agreement, have been made to the Defendant or to the Defendant's attorneys with regard to this plea, and none will be made or entered into unless in writing and signed by all parties.

ALEXANDER ALPEROVICH
Defendant

May 6th, 2021
Date

STEPHEN ROSS JOHNSON
Defendant's Counsel

May 6, 2021
Date

WILLIAM D. MASSEY
Defendant's Counsel

May 6, 2021
Date

8

DANIEL KAHN
Acting Chief
Fraud Section, Criminal Divison
U.S. Department of Justice

and

JOSEPH C. MURPHY, JR.
Acting United States Attorney
Western District of Tennessee

By:

*Katherine C. Payerle*
_____
KATHERINE PAYERLE
Assistant Deputy Chief
Trial Attorney, Health Care Fraud Unit
Fraud Section, Criminal Divison
U.S. Department of Justice

JAMES POWELL
Assistant United States Attorney
Western District of Tennessee

5/14/2021
_____
Date

9